**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**CYNTHIA MENDOZA-MARTINEZ,**

    **Plaintiff,**

**v.**                                                                                                                                    **No. 20-cv-0310 SMV**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the Social Security Administration,[1]**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 20], filed on March 1, 2021. The Commissioner responded on April 30, 2021. [Doc. 24]. Plaintiff replied on May 7, 2021. [Doc. 25]. The parties have consented to my entering final judgment in this case. [Doc. 21]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds the Motion is well-taken and should be granted.

Specifically, the administrative law judge's ("ALJ's") reasons for rejecting Dr. Steinman's opinion are too attenuated from the evidence in this record to allow for meaningful review. Additionally, the ALJ's reasons for rejecting Dr. Davis's opinion are unsupported by substantial evidence. Reversal is required. Both Dr. Steinman and Dr. Davis agreed that Plaintiff was markedly limited in her ability to accept supervision, Tr. 282, 333, and the vocational expert

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

("VE") testified that such limitation would result in disability, Tr. 1486–87. Therefore, remanding for further administrative proceedings would serve no useful purpose. The case, which has been pending for nearly twelve years, will be remanded for an immediate award of benefits under both Title II and Title XVI. *See* 42 U.S.C. § 405(g).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see* 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *see Grogan v. Barnhart*, 399 F.3d

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

1257, 1261 (10th Cir. 2005). If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## Procedural Background

Plaintiff has already been found disabled by the Commissioner as of November 1, 2014 and has been receiving SSI since that time. *See* [Doc. 20] at 4. This appeal relates to the time prior to November 1, 2014. Plaintiff filed her first applications for SSDI and for SSI in February and March of 2010, respectively. She alleges that she became disabled on November 1, 2008. The relevant time period, however, is between February 17, 2009 (one year prior to her SSDI application, which is the earliest time for which she can receive benefits) and October 31, 2014 (the day before the date on which she was already determined to be disabled). *See* [Doc. 20] at 20.

Plaintiff's claims were denied initially and on reconsideration. Tr. 10. On May 31, 2013, ALJ Ann Farris issued the first (of three) ALJ decisions. Tr. 13–33. She found that Plaintiff suffered from severe degenerative disc disease of the lumbar spine, osteoarthritis of the knee, depression, dysthymic disorder, polysubstance abuse, and post-traumatic stress disorder ("PTSD"). Tr. 18. As a result, ALJ Farris found that Plaintiff could not perform more than a limited range of light, unskilled work. Tr. 21. The ALJ agreed that Plaintiff could not return to her past work but found that she could perform other work that existed in significant numbers in

the national economy. Tr. 26. The Appeals Council declined to review the ALJ's unfavorable decision on October 24, 2014.[4] Tr. 512–15.

Plaintiff initiated her first appeal to this Court, and the Honorable Carmen E. Garza, Chief United States Magistrate Judge, remanded the case for reevaluation of Dr. Steinman's and Dr. Davis's opinions. Tr. 538–60; *Mendoza-Martinez v. Colvin*, No. 14-cv-1151 CG (D.N.M. Feb. 25, 2016) (first federal court decision). ALJ Ann Farris held a second administrative hearing. ALJ Farris determined that Plaintiff suffered from severe osteoarthritis of the knee, degenerative disc disease, obesity, polysubstance abuse, cyclothymic disorder, major depressive disorder, and PTSD. Tr. 441. She found that Plaintiff was limited to a range of light, unskilled work. Tr. 446. Although the ALJ found that Plaintiff could not return to her past employment, she also found that Plaintiff could perform other work that existed in significant numbers in the national economy, Tr. 454. Accordingly, she again denied Plaintiff's claims for benefits. Tr. Tr. 456.

Plaintiff initiated her second appeal to this Court, and after filing her opening brief, the Commissioner conceded and agreed to a voluntary remand. Tr. 1521–24. On the second remand, ALJ Jennifer M. Fellabaum held a third administrative hearing on December 17, 2019, in Albuquerque, New Mexico. Tr. 1436, 1461–88. Plaintiff appeared in person with her attorney. Tr. 1436, 1461–88. The ALJ heard testimony from Plaintiff and an impartial VE, Thomas Grenier. *Id.* The ALJ issued her unfavorable decision on February 7, 2020, determining that Plaintiff was not disabled "through October 31, 2014" (i.e., not disabled prior to November 1, 2014, the date that Plaintiff had already been determined disabled). Tr. 1450.

---

[4] After the Appeals Council declined to review the ALJ's decision, Plaintiff filed a subsequent application for benefits on November 13, 2014. *See* [Doc. 20] at 4. The subsequent application was approved, and Plaintiff was determined to be disabled as of November 1, 2014. *See id.*

Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since November 1, 2008, her alleged onset date. Tr. 1439. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis in the left hip and bilateral knees, carpal tunnel syndrome, right ankle fracture, depression, anxiety, and PTSD. Tr. 1439. The ALJ also found that Plaintiff's hypertension, obstructive sleep apnea, allergic rhinitis, hypothyroidism, left elbow epicondylitis, fatty liver, obesity, and cocaine dependence were not severe. Tr. 1439–40.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 1440–41. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 1441–48.

In assessing Plaintiff's RFC, and as is relevant to this appeal, the ALJ rejected the consultative psychological opinions of Dr. Steinman and Dr. Davis, Tr. 1446–47, who had agreed that Plaintiff was markedly limited in her ability to be supervised, *compare* Tr. 282 (Dr. Steinman's opinion), *with* Tr. 333 (Dr. Davis's opinion). The ALJ found that:

> from the alleged onset date through January 11, 2011 [the date last insured], [Plaintiff] had the [RFC] to lift and carry 20 pounds occasionally and 10 pounds frequently. She could sit, stand, and walk for six hours in an eight-hour workday. [Plaintiff] could occasionally stoop, crouch, kneel, and crawl. She could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds. [Plaintiff] must avoid all exposure to unprotected heights and hazardous machinery. She must avoid concentrated exposure to environmental irritants and extreme cold. [Plaintiff] could occasionally use foot controls bilaterally. [Plaintiff] could perform tasks that are learned in up to one month, but can never perform fast production work, and work must be performed in the same location every day. She could occasionally interact with coworkers and supervisors. [Plaintiff] could have rare interaction with the general public, defined as less than 10 percent of the

>workday. Additionally, from January 12, 2011 through October 25, 2014, [Plaintiff] could frequently finger and handle bilaterally.

Tr. 1441.

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work as a customer service representative. Tr. 1448. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 1448–50. She found that Plaintiff could perform work that existed in significant numbers in the national economy and, therefore, was not disabled. *Id.* Plaintiff filed this third appeal on April 7, 2020. [Doc. 1].

## **Discussion**

The reasons provided by the ALJ for rejecting Dr. Steinman's opinion are too disconnected from the facts of this case to provide for meaningful review. In the abstract, the reasons seem logical enough. But on review of the record, their attenuation becomes clear. Further, the ALJ's reasons for rejecting Dr. Davis's opinion are not supported by substantial evidence.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) (2012)[5]). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight she assigns to each medical source opinion and why. *Id.* When evaluating the opinion of any medical source, the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or

---

[5] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

7

> testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* §§ 404.1527(c), 416.927(c).  Not every factor will apply in each case, and therefore, an ALJ is not required to discuss every factor.  Social Security Ruling ("SSR") 06-03p,[6] 2006 SSR LEXIS 5 at *5.  "[T]he ALJ's decision is sufficient if it permits [the court] to follow the adjudicator's reasoning." *Keyes-Zachary*, 695 F.3d at 1164 (internal quotation marks omitted).  "[T]he factors for weighing the opinions of acceptable medical sources set out in 20 C.F.R. §§ 404.1527(d), 416.927(d) apply equally to all opinions from medical sources who are not acceptable medical sources as well as from other non-medical sources."  *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (internal quotation marks omitted).  *See* §§ 404.1527(c), 416.927(c) (for claims such as Plaintiff's, filed before March 27, 2017, the general rule is that examining opinions are entitled to more weight than non-examining opinions, and treating opinions are entitled to the most weight of all).

Moreover, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same).  Nevertheless, "[a]n

---

[6] SSR 06-03p was rescinded for claims filed on or after March 27, 2017.  82 Fed. Reg. 15263 (Mar. 27, 2017).  Because Plaintiff's claims were filed before March 27, 2017, SSR 06-03p applies to this case.

ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).  ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p,[7] 1996 SSR LEXIS 2, at *13, (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).  "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20.  The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

<u>The ALJ committed reversible error in evaluating Dr. Steinman's opinion.</u>

Here, Dr. Steinman performed a consultative psychological examination of Plaintiff on December 9, 2010. Tr. 279–82.  At issue is Dr. Steinman's opinion that Plaintiff was markedly limited in her ability to be supervised. Tr. 282.  The doctor explained that "[Plaintiff's] history of abuse limit[ed] markedly her trust and her ability to be supervised." *Id.*  The ALJ rejected this portion of Dr. Steinman's opinion. Tr. 1446.  She reasoned that: (1) Dr. Steinman did not have access to any independent medical reports when forming his opinion, (2) Plaintiff had a "lack of treatment for mental health before 2011," and (3) "the medical evidence submitted at the time of the hearing did not include any objective findings to support a marked limitation in the ability to be supervised." Tr. 1446.

---

[7] SSR 96-5p was rescinded for claims filed on or after March 27, 2017.  82 Fed. Reg. 15263 (Mar. 27, 2017).  Because Plaintiff's claims were filed before March 27, 2017, SSR 96-5p applies to this case.

Plaintiff challenges these reasons. She argues that they are not clear, adequate, or legitimate and, therefore, do not allow for meaningful review. [Doc. 20] at 16. Defendant responds that Dr. Steinman's report is consistent with the ALJ's RFC, other than the marked limitation in the ability to be supervised. [Doc. 24] at 6. And Defendant urges that the ALJ's reasons for rejecting that limitation were "valid considerations that were supported by the record." *Id.* The Court agrees with Plaintiff. Under different circumstances, the reasons provided by the ALJ might be legitimate reasons for rejecting a medical source opinion. But here, the Court is not able to follow the ALJ's reasoning.

First, the ALJ explains that she rejected Dr. Steinman's opinion because Plaintiff had not sought mental health treatment prior to 2011, Tr. 1446, but the Court does not follow why a lack of treatment would undermine Dr. Steinman's opinion. Usually, when an ALJ points out that someone has not sought or followed up on treatment, the implication is that her symptoms must not be as severe as claimed. Otherwise, the person would have sought treatment. But an ALJ "will not find [a claimant's] symptoms inconsistent with the evidence" due to a lack of treatment "without considering possible reasons" for not seeking treatment. Social Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4, at *23, 2016 WL 1119029, at *8 (Mar. 16, 2016). Before an ALJ may base an adverse credibility determination on a "failure to pursue treatment or take medication, [she] should consider (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (internal quotation marks omitted).

Here, the ALJ found that Plaintiff had not sought mental health treatment prior to 2011, but there is no indication that she inquired why, nor did she discuss the other factors. Thus, it does not appear the ALJ intended to use Plaintiff's "lack of treatment for mental health prior to 2011" as support for an adverse credibility finding. In fact, the ALJ explicitly "accord[ed] maximum weight to [Plaintiff]'s subjective allegations of symptoms." Tr. 1448; *accord* Tr. 1441 (ALJ's assessing a marked limitation in the ability to interact with others "based primarily on [Plaintiff]'s subjective allegations of difficulty interacting with others"). Setting aside Plaintiff's own credibility, the ALJ discounted *Dr. Steinman's* opinion based on Plaintiff's lack treatment prior to 2011. The Court does not follow why Plaintiff's lack of mental health treatment prior to 2011 undermined Dr. Steinman's opinion.

Second, a lack of access to independent medical reports would detract from a source opinion, assuming such reports existed and differed from the opinion. Here, however, at the time Dr. Steinman authored his opinion, there was no other psychological report. Other reports were drafted later, but two were based on Dr. Steinman's own opinion, and the other (from Dr. Davis) agreed that Plaintiff was markedly limited in her ability to be supervised, Tr. 333 (assessing a marked limitation in the ability to "accept instructions and respond appropriately to criticism from supervisors"). Accordingly, the Court is not able to follow why the lack of access to independent medical reports, which did not exist, might have weighed against Dr. Steinman's opinion.

Third, the ALJ found that "the medical evidence submitted at the hearing did not include any objective findings to support a marked limitation in the ability to be supervised." Tr. 1446. A psychological opinion, however, "may rest either on observed signs and symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). It is not clear

what "objective findings" the ALJ had in mind. Certainly, there is no x-ray or blood test to determine how well an individual can accept supervision.

Although the ALJ provided reasons for rejecting Dr. Steinman's marked limitation in the ability to be supervised, these reasons are not sufficiently connected to the circumstances of this case to provide for meaningful review. Reversal is warranted.

<u>Alternatively, the ALJ committed reversible error in evaluating Dr. Davis's opinion.</u>

Esther D. Davis, Ph.D., performed a psychological evaluation of Plaintiff on April 11, 2013. Tr. 324–31. In preparing her report, Dr. Davis reviewed Dr. Steinman's report, as well as several medical records.[8] Dr. Davis assessed Plaintiff with a score of 20 (out of 30) on the Montreal Cognitive Assessment ("MoCA"); the doctor noted that a score less than 26 was indicative of mild cognitive impairment. Tr. 329. On the Burns Depression Inventory ("Burns"), Plaintiff scored 32, which was within the range of severe depression. Tr. 328. On the Generalized Anxiety Disorder 7-Item scale ("GAD-7"), Plaintiff scored within the high-end range of severe anxiety. Tr. 329. Dr. Davis noted that Plaintiff's scores on the Burns and the GAD-7 (showing severe depression and severe anxiety) were consistent with the doctor's observations during the clinical interview. Tr. 328–29. Dr. Davis diagnosed Post-Traumatic Stress Disorder; Major Depressive Disorder, recurrent, severe without psychotic features; Generalized Anxiety Disorder; and Panic Disorder with Agoraphobia. Tr. 329. Dr. Davis noted that Plaintiff was victim of

---

[8] Dr. Davis reviewed medical records from: Alta Vista Regional Hospital, dated July 8 to August 16, 2008, and January 5, 2009, to August 30, 2020; Alta Vista Orthopedic Specialists, dated July 19 to August 24, 2010; Santa Fe Brain and Spine, dated September 16, 2010; Miguel Pupiales, M.D., dated January 11 to April 7, 2011, as well as Plaintiff's Function Report – Adult, dated September 14, 2010. Tr. 324.

physical abuse and incest. *Id.* She found Plaintiff's Global Assessment of Functioning[9] score was 41 at the time of the evaluation and 41 over the past year. *Id.*

Agreeing with Dr. Steinman, Dr. Davis found that Plaintiff was markedly limited in her ability to "[a]ccept instructions and respond appropriately to criticism from supervisors." Tr. 333. Further, Dr. Davis assessed marked limitations in understanding and memory; concentration and persistence; social interaction, including the ability to be supervised; and adaptation. Tr. 332–33; *see* Tr. 1446–47 (ALJ's discussion of same). Dr. Davis believed Plaintiff's symptoms were too severe to maintain employment. Tr. 330; *see* Tr. 1446–47 (ALJ's discussion of same). The ALJ rejected Dr. Davis's opinion, finding that it was "based entirely on [Plaintiff's] subjective allegations and [was] not supported by objective findings in the medical record." Tr. 1447. The ALJ gave no other reasons. *See* Tr. 1446–47.

Plaintiff argues that the ALJ erred in evaluating Dr. Davis's opinion, and the Court agrees. There is not substantial evidence to support the ALJ's finding that Dr. Davis's opinion was "based entirely on [Plaintiff's] subjective allegations." Nor is there substantial evidence to support her finding that Dr. Davis's opinion was "not supported by objective findings in the medical record." Dr. Davis's report contained the results of several psychological tests, which were consistent with her opinions. Tr. 324–36. The results of her psychological tests constitute objective findings. *See*

---

[9] A Global Assessment of Functioning score (or "GAF" score) is a clinician's determination on a scale of 1 to 100 of an individual's overall level of functioning. *Am. Psychiatric Ass'n*, Diagnostic and Statistical Manual of Mental Disorders ("*DSM-IV*") 34 (4th ed. 2010). The ALJ explained that a "GAF [score] of 41–50 indicates that the individual experiences serious symptoms *or some difficulty* in social or occupational functioning, or any serious impairment in school, social, or occupational functioning." Tr. 1447 n.1 (citing *DSM-IV* 34) (emphasis added). This explanation is not consistent with the DSM-IV, however. A GAF score of 41–50 indicates "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *DSM-IV* 34 (emphases in original). Whereas "*some difficulty* in social or occupational functioning" is associated with a GAF score of 61–70, *id.* (emphasis added), which is significantly higher that Plaintiff's score.

13

*Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir. 1987) ("The term 'objective' . . . refers . . . to any evidence that an examining doctor can discover and substantiate. . . . [P]sychological medical evidence is objective, because [it] is amenable to external testing.").

In defense of the ALJ's finding (that Dr. Davis's opinion was "based entirely" on Plaintiff's subjective allegations), Defendant focuses on two specific portions of Dr. Davis's report. First, Defendant argues that in the portion labeled "summary and recommendations," Dr. Davis "barely mention[ed the psychological] testing, and instead provide[d] a recitation of Plaintiff's subjective complaints and self-reports." *Id.* at 9 (citing Tr. 329–30). This argument is without merit.

The first paragraph in the "summary and recommendations" section briefly recounted Plaintiff's family history and medical problems. Tr. 329. The second, third, and fourth paragraphs revolved around the diagnoses assessed by Dr. Davis. These paragraphs also referenced Plaintiff's self-reports, but did so in relationship to her diagnoses and psychological test scores.[10] Tr. 329–30. The fifth paragraph explained why Dr. Davis disagreed with certain of Dr. Steinman's less restrictive findings. Tr. 330. The final paragraph explained why Dr. Davis believes Plaintiff could manage her own finds, despite the mild cognitive impairment revealed by the MoCA. Tr. 331.

---

[10] To illustrate, the Court includes one of the paragraphs:
> Ms. Mendoza-Martinez does seem to be suffering with Major Depressive Disorder, Recurrent, Severe, Without Psychotic Features. She fits the criteria quite strongly and did score in the "severe depression" range on the Burns Depression Inventory. She experiences depressed mood most of the day, nearly every day. She describes having a markedly diminished interest or pleasure in most activities. She experiences a significant decrease in appetite, even though she says that she is gaining weight. She has difficulty falling and staying asleep. She claims that she experiences psychomotor agitation and that was witnessed during the evaluation. She experiences fatigue and loss of energy. She states that she is always tired. Furthermore, she expresses feelings of worthlessness, which originates from being molested by her father. She has feelings of guilt as a result of her children seeing her being physically abused. She has a difficult time trusting people and being around people. She also avoids being around people because she is afraid that she might hurt someone's feelings. Finally, she recurrently stated that she has a diminished ability to think or to concentrate and is very indecisive.

Tr. 329–30.

These paragraphs show that Dr. Davis, in fact, did not rely exclusively on Plaintiff's own subjective statements. To the extent that there is any evidence that could be interpreted as Dr. Davis's having "based [her opinions] entirely on [Plaintiff's] subjective allegations," Tr. 1447, the contrary evidence—evidence that Dr. Davis's report is based on psychological testing, the clinical interview and observations, review of medical records, and clinical diagnoses—is overwhelming. *See Langley*, 373 F.3d at 1118 (The ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record.").

Second, Defendant cites to the check-box form completed by Dr. Davis, entitled "12.06 Anxiety-Related Disorders." *Id.* (citing Tr. 336). The final checkbox on the form allows the doctor to indicate whether she believes the patient's anxiety "[r]esult[s] in complete inability to function independently outside the area of one's home." Tr. 336. Dr. Davis checked that box. Although the form does not provide space for further explanation, Dr. Davis wrote in the margin, "says she doesn't leave her house." *Id.* As Defendant sees it, this notation shows that Dr. Davis based her assessment (of the functional limitations caused by Plaintiff's anxiety) on nothing more than Plaintiff's own statement that she does not leave her house. [Doc. 24] at 9. If this form were all that Dr. Davis had submitted, Defendant might have a point. But Dr. Davis submitted an 8-page report describing the psychological testing she administered, her clinical interview and observations, review of medical records, and the diagnoses she assessed—including test scores and diagnoses specifically addressing anxiety. Simply put, the ALJ's finding that Dr. Davis's opinion was "based entirely on [Plaintiff's] subjective allegations" is not supported by substantial evidence (as low as that bar is). Tr. 1447.

Finally, Defendant cites to certain portions of the ALJ's decision, apparently, to highlight evidence that she sees as undermining Dr. Davis's conclusions. [Doc. 24] at 8. These arguments, however, cannot salvage the ALJ's decision, because the ALJ did not make them. For example, the ALJ described the mental health treatment Plaintiff received after Dr. Davis's evaluation, Tr. 1447, but nothing in the ALJ's decision could be interpreted as a finding that such treatment "failed to provide support for [Dr. Davis's] extreme opinion." [Doc. 24] at 8. That is counsel's argument, not the ALJ's finding.[11] *See* Tr. 1447. "Affirming this post hoc effort to salvage the ALJ's decision would require [the Court] to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). "Judicial review is limited to the reasons stated in the ALJ's decision," *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008), and this Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself," *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007).

<u>The case will be remanded for an immediate award of benefits.</u>

District courts have discretion to remand either for further administrative proceedings or for an immediate award of benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In making this decision, courts should consider both "the length of time the matter has been pending and whether or not 'given the available evidence, remand for additional fact-finding would serve [any] useful purpose but would merely delay the receipt of benefits.'" *Salazar v.*

---

[11] Counsel similarly presents another argument that is not found in the ALJ's decision. The ALJ described Plaintiff's treatment appointment between February 22, 2012, and January 15, 2013. Tr. 1446. The ALJ described Plaintiff's medications and mood during those appointments. *Id.* The ALJ did not find—as counsel suggested—that the treatment records showed "what would appear to be good results based on the lack of change in her treatment regimen during that time." [Doc. 24] at 8. That is counsel's argument, not the ALJ's finding. *See* Tr. 1446

16

*Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (citation omitted) (quoting *Harris v. Sec'y of Health & Human Servs.,* 821 F.2d 541, 545 (10th Cir. 1987) (remanding for an immediate award of benefits where, *inter alia*, the application had been pending for more than five years)). When the Commissioner has failed to satisfy her burden of proof at step five, and there has been a long delay due to her erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate. *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five[] and the long delay [of at least four years] that has already occurred as a result of the Secretary's erroneous disposition of the proceedings"). The Commissioner "is not entitled to adjudicate a case *ad infinitum* until she correctly applies the proper legal standard and gathers evidence to support her conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

Defendant argues that remand for an immediate award of benefits is not appropriate. Defendant argues that an immediate award of benefits "is appropriate only when additional fact-finding would serve no purpose *and the record 'fully supports' that Plaintiff is disabled 'as a matter of law*.'" [Doc. 24] at 9–10 n.6 (quoting *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (emphasis added). This quote misrepresents the language and import of *Sorenson*, and it misrepresents the law. The standard asks when additional fact-finding would serve no useful purpose. Full stop. There is no requirement that the "record fully support[] that the Plaintiff is disabled as a matter of law." *Id.*

Defendant continues, "the record must be fully developed, the evidence 'point but one way and is susceptible to no reasonable inferences which may support' a contrary position, and the facts must conclusively demonstrate that Plaintiff is in fact disabled under the Act." *Id.* (quoting

17

*Mt. Dudes v. Split Rock Holdings, Inc.*, 946 F.3d 1122, 1129 (10th Cir. 2019). Defendant acknowledges that *Mt. Dudes* describes the standard for judgment as a matter of law but makes no effort to explain why that standard should apply to this, a social security appeal. That standard does not govern this case.

Further, Defendant states that a district court can immediately award benefits only when the evidence is conclusive "even if there have already been lengthy administrative proceedings, because 'the appeals court does not reweigh the evidence in social security cases.'" *Id.* (quoting *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996)). This is a misrepresentation of *Miller* and of the law. If anything, *Miller* suggests the opposite. In reversing and remanding the case to the district court, the appellate court stated "After four administrative hearings, two of which were held pursuant to explicit instructions by the district court to address the [closed period of time], we would caution the agency that 'the Secretary is not entitled to adjudicate a case ad infinitum until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion.'" *Miller*, 99 F.3d at 978 (citing *Sisco v. U.S. Dep't of Health & Human Servs.,* 10 F.3d 739, 746 (10th Cir. 1993) (reversing and remanding for an immediate award of benefits without finding conclusive evidence of disability)).

Here, there have already been three administrative hearings and three decisions by ALJs. On each occasion, Plaintiff met her burden to show disability at the first four steps of the sequential evaluation process. Tr. 26, 454, 1448. This case concerns whether Plaintiff was disabled between February 17, 2009, and October 21, 2014. *See* [Doc. 20] at 20. The medical evidence is complete as to this time period. No further medical evidence is needed. Plaintiff has met her burden.

Moreover, the VE testified that if Plaintiff were markedly limited in her ability to be supervised (as Dr. Steinman had opined), she would not be able to work.  Tr. 1486–87.  The Commissioner has thus far been unable to explain why such limitation should be rejected.  Additionally, the record contains Dr. Davis's opinion from the relevant time period, and she agrees that Plaintiff is markedly limited in her ability to "[a]ccept instructions and respond appropriately to criticism from supervisors."  Tr. 333.  Therefore, the Court finds that there is no reasonable probability that Plaintiff will be denied benefits, and requiring further proceedings before the Commissioner would merely delay the award.  Alternatively, even without relying on the testimony of the VE, the Court would still decline to remand to give Defendant a fourth opportunity to meet her burden.  This case has been pending for close to twelve years.  As in *Ragland*, the Court will exercise its discretion and remand for an immediate award of benefits.

## Conclusion

The Court cannot follow the ALJ's reasons for rejecting Dr. Steinman's opinion.  Additionally, the ALJ's reasons for rejecting Dr. Davis's opinion are not supported by substantial evidence.  Plaintiff's Motion will be granted.  Finally, as this case has been pending for nearly *twelve years*, and because further fact-finding would serve no useful purpose, the case will be remanded for an immediate award of benefits under both Title II and Title XVI.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 20] be

**GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for an immediate award of benefits. *See* § 405(g).

    **IT IS SO ORDERED.**

                                             **STEPHAN M. VIDMAR**
                                             **United States Magistrate Judge**
                                             **Presiding by Consent**